UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES GAO,

               Plaintiff,

      v.

PENTIUM ATLAS FUND III, LP, *et al*.,

               Defendants.

CASE NO. 2:25-cv-01543-RSL

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on the "Motion to Dismiss Complaint by Defendants Pentium Atlas Fund III, LP, and Pentium Invest, LLC." Dkt. 12. In September 2023, plaintiff invested $800,000 in defendant Pentium Atlas Fund III, LP, a hedge fund that was managed by its general partner, defendant Pentium Invest, LLC. His investment followed review of a Private Placement Memorandum ("PPM") and an Investor Presentation, it was in exchange for limited partnership shares in the fund, and the terms of the arrangement are memorialized in a Limited Partnership Agreement. Plaintiff alleges that defendants' disclosures regarding the investment were materially misleading and that, because the fund did not follow the multi-strategy investment program and minimal leverage approach he was promised, he lost his entire investment during a spike in market volatility in early August 2024. In addition, plaintiff alleges that, at the very least,

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 1

defendants should have sequestered approximately $450,000 that he had withdrawn from the fund shortly before it was liquidated.

Plaintiff alleges that defendants' disclosures violated Sections 10(b) and 20(a) of the Exchange Act, Rule 10b-5, and the Securities Act of Washington. The disclosures are also the basis of plaintiff's fraudulent inducement, negligent misrepresentation, and Washington Consumer Protection Act claims. The alleged failure to pay or sequester the withdrawn funds forms the basis of breach of fiduciary duty, unjust enrichment, conversion, and breach of contract claims. The fund and Pentium Invest moved to dismiss all of the claims asserted against them under Fed. R. Civ. P. 12(b)(6).

**A. Standard of Review**

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the context of a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

> To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." []*Twombly*, 550 U.S. [at 570]. A plausible claim includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *U.S. v. Corinthian Colls*., 655 F.3d 984, 991 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under the pleading standards of Rule 8(a)(2), a party must make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). . . . A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus,

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 2

"conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

*Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1144–45 (9th Cir. 2021). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

While the Supreme Court "has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions" brought by the government, "private securities fraud actions . . . , if not adequately contained, can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007) (internal citations omitted). Containment is provided by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which Congress enacted as a check against abusive litigation by private parties. The statute requires plaintiff to state his claims with particularity regarding both the facts of the alleged securities fraud and the facts evidencing scienter (*i.e.*, the defendant's intention "to deceive, manipulate, or defraud"). *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194, and n. 12, (1976); *see* 15 U.S.C. § 78u–4(b)(1), (2).

**B. Scope of the Record**

When ruling on a motion to dismiss under Rule 12(b)(6), the Court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). "We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 3

inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In this case, plaintiff attached to his complaint the Limited Partnership Agreement, the PPM, and the Investor Presentation: the Court has considered those documents in ruling on defendants' motion. Defendants request that the Court take judicial notice of a chart purportedly representing market volatility (Dkt. 17-1 at 4) and incorporate by reference an August 14, 2024, letter from the fund to its investors (Dkt. 17-1 at 6-7), financial statements and an auditors' report provided to investors following the liquidation of the fund (Dkt. 17-1 at 9-24), and a July 31, 2024, email regarding the withdrawal of funds (Dkt. 17-1 at 26).

**1. Judicial Notice**

Federal Rule of Evidence 201(b) allows courts to take judicial notice of facts that "are not subject to reasonable dispute" because it "is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Defendants request that the Court consider a chart purportedly representing the volatility of the S&P 500 Index between September 2019 and the date the fund was liquidated in support of their assertion that the market conditions surrounding the liquidation were outside the realm of regular expectations (what defendants label a Black Swan Event). The chart was apparently generated on August 5, 2024, and published on TradingView.com by Matt Simpson. Dkt. 17-1 at 4. The existence of the chart cannot reasonably be questioned, and the accuracy of the data reflected therein can be readily determined from published stock data. Documents showing historical stock prices are generally subject to judicial notice, *see, e.g., Alghazwi v. Beauty Health Co.*, 801 F. Supp. 3d 982, 1000 (C.D. Cal. 2025), and plaintiff has neither disputed the document's existence, authenticity, or accuracy nor objected to its consideration in the context of defendants' motion to dismiss. The chart therefore meets the standards for judicial notice set forth in

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 4

Federal Rule of Evidence 201(b). *See Daniels-Hall*, 629 F.3d at 998–99 (taking judicial notice of a list of approved vendors "displayed publicly" on websites where neither party disputed its authenticity or accuracy).

### 2. Incorporation by Reference

A document that is not physically attached to a complaint may nevertheless be incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Mere reference to a document in the complaint is not sufficient: rather, the document must be integral to or form the basis of plaintiff's claims. *Id.* at 908-09. In addition, the document's authenticity must not be in question and there must be no disputed issues as to the document's relevance. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citations omitted). The authenticity of the communications submitted by defendants are not disputed, and plaintiff appears to concede that they are integral to his claims. Dkt. 24 at 12, n.7.

### 3. Assumption of Truth

In the circumstances presented here, incorporation by reference of the August 14, 2024, letter from the fund to its investors, the financial statements and auditors' report provided to investors following the liquidation of the fund, and/or the July 31, 2024, email regarding the withdrawal of funds does not mean that the Court must accept all of the statements contained therein as true. When plaintiff cites defendants' correspondence and reports for a limited purpose, such as to show that a statement was made, the accuracy of the statement and every other representation contained therein is not necessarily admitted and will not be presumed simply because the document was cited for certain purposes. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014-15 (9th Cir. 2018); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts

may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.") (internal quotation marks and citations omitted); *Lopez v. Apple, Inc.*, No. 19-CV-04577-JSW, 2021 WL 4059106, at *2 n.2 (N.D. Cal. Sept. 2, 2021). The Court will therefore consider these investor communications as evidence of what defendants said, but not for the truth of the averments unless they have been adopted as true in the complaint.

**C. Federal Securities Fraud (Count I)**

A securities fraud claim "under § 10(b) and Rule 10b-5 must contain six essential elements: '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011). Defendants argue that plaintiff fails to adequately allege the first two elements of his federal securities fraud claim.

Plaintiff alleges that defendants materially misrepresented the fund's investment strategy by "claiming that the Fund would not use meaningful leverage, would not take significant short positions, and would pursue multiple, diversified investment strategies." Dkt. 24 at 7, *see* Dkt. 1 at ¶¶ 45-47. Defendants argue that there were no actionable misrepresentations because, when the pre-investment documents are considered as a whole, defendants adequately and fully disclosed that the fund could, in its sole discretion, take short positions that relied on the use of leverage and that it might not be sufficiently diversified to avoid loss. In addition, defendants argue that, even if plaintiff's description of the fund's investments and risk-level were accurate on the date the fund collapsed, investments are not static, and the complaint fails to describe how the investment strategy

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 6

at the time of plaintiff's investment was at odds with defendants' pre-investment statements.

The PSLRA requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). "By requiring specificity, § 78u–4(b)(1) prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating why the defendant's alleged statements or omissions are deceitful." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

> Importantly, the PSLRA "did not impose an insurmountable standard . . . A complaint's factual allegations remain entitled to a presumption of truth . . . , and an Exchange Act claim survives dismissal if the factual allegations in the complaint allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Constr. Laborers Pension Tr. of Greater St. Louis v. Funko Inc.*, __ F.4th __, 2026 WL 292424, at *9 (9th Cir. Feb. 4, 2026) (internal quotation marks, citations, and alterations omitted).

### 1. Utilization of Leverage

Plaintiff alleges that, through the PPM and the Investor Presentation, defendants falsely stated that Pentium Invest "does not generally expect to utilize leverage as a part of the Partnership's investment program" and that the fund would "maintain[] substantial liquidity and avoid overleveraging." Dkt. 1 at ¶ 46. The first statement is part of a paragraph that reads:

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 7

> While [Pentium Invest] does not generally expect to utilize leverage as a part of the Partnership's investment program, the Partnership, in the sole discretion of [Pentium Invest], retains the authority to do so, including, without limitation, borrowing cash and entering into derivative transactions that have the effect of leveraging the Partnership's portfolio. The use of leverage may, in certain circumstances, maximize the adverse impact to which the Partnership's investment portfolio may be subject. The Partnership may also engage in securities lending transactions.

Dkt. 1 at 89. The second alleged misrepresentation regarding the use of leverage is part of the Investor Presentation, where defendants tout the fund's goal of capital presentation through a "[r]esilient portfolio layered with multiple uncorrelated strategies while maintaining substantial liquidity and avoid overleveraging." Dkt. 1 at 144.

Courts have recognized a "truth-on-the-market" doctrine pursuant to which defendants bear the "heavy burden" of showing that the information allegedly withheld or misrepresented was, in fact, "transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created by insider's one-sided representations." *Provenz v. Miller*, 102 F.3d 1478, 1492-93 (9th Cir. 1996) (internal quotation marks omitted). In this case, defendants have shown that the very documents on which plaintiff relies to prove a misrepresentation regarding the utilization of leverage clearly disclose that the fund was authorized to use leverage, that its "primary focus lies in utilizing index options," and that Pentium Invest was not limited as to the type of investments made or the amount of partnership capital committed to any one type of investment. Dkt. 1 at 86, 88-90, and 102.[1] Thus, whatever "intensity and credibility" attached to the PPM and Investor Presentation extended to both the alleged misrepresentations and the joined statements disclosing that leverage could – if not would – be used without any significant limitations. Under these circumstances, the Court finds

---

[1] Plaintiff acknowledges in the complaint that leverage is inherent in an option. Dkt. 1 at ¶ 47 n.4.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 8

that any sentence or clause that might, in isolation, be read as a disavowal of the use of leverage is immaterial given the surrounding, simultaneous disclosures. *See Conn. Ret. Plans & Tr. Funds v. Amgen Inc*., 660 F.3d 1170, 1177 (9th Cir. 2011) ("[T]he truth-on-the-market defense is a method of refuting an alleged misrepresentation's materiality.") (emphasis omitted). Plaintiff has therefore failed to allege facts giving rise to a plausible inference that the market was misled regarding the fund's use of leverage.

Even if one could reasonably infer that the fund was overleveraged and illiquid at the time it collapsed in August 2024, plaintiff has not explained how or why the disclosures he received in September 2023, almost a year earlier, were false. Plaintiff argues that the fund's overleveraged position was an existing fact as of September 2023, but there are no allegations regarding the fund's investments at that time. The fund did not exist until August 1, 2023, the PPM was dated September 2023, and the fund's starting investments, portfolio, and allocations are unknown. Dkt. 1 at ¶¶ 21 and 33. The only relevant allegation is that the PPM and Investor Presentation "must have been materially misleading at the time they were made" because any material changes in investment strategy required the consent of a majority interest of the limited partners, and plaintiff was never asked to consent. Dkt. 1 at ¶¶ 43 and 65. But, as discussed above, the challenged documents disclosed not only that the general partner retained the authority to leverage the portfolio, but also that the fund's investment strategy focused on options (with their inherent leverage). Plaintiff has not identified a change in investment strategy that would have required the consent of the limited partners or raised a plausible inference that the overleveraged and illiquid position the fund found itself in in August 2024 pre-existed plaintiff's investment.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 9

**2. Short Positions**

Plaintiff alleges that a disclosure that "[t]he Partnership may engage in short selling as part of its investment strategy" implies that there is a limitation on the use of short selling. Dkt. 1 at ¶ 47.[2] The source of the limitation is not stated, but plaintiff repeatedly highlights the word "may," suggesting that it acts as a constraint on the number or volume of short sales in the portfolio. The argument is unpersuasive for two reasons. First, the word "may" is a permissive term indicating that an action is allowed but not mandatory. Absent additional information, it does not contain an inherent limitation on the exercise of the authority granted. Second, the paragraph discussing the risks associated with short sales makes clear that no such limitation is intended. After stating that the fund "may" invest in short sales, it states that "[t]here is no prescribed limits to the amount of

---

[2] The PPM describes short selling and the fund's use thereof as follows:

Short Selling. The Partnership may engage in short selling as part of its general investment strategy. Short selling involves selling securities that are not owned and borrowing the same securities for delivery to the purchaser, with an obligation to replace the borrowed securities at a later date. Short selling allows the Partnership to profit from declines in market prices to the extent such decline exceeds the transaction costs and the costs of borrowing the securities. However, because the borrowed securities must be replaced by purchases at market prices in order to close out the short position, any appreciation in the price of the borrowed securities would result in a loss upon such repurchase. The Partnership's obligations under its short sales will be marked to market daily and collateralized by the Partnership's assets held at the broker, including its cash balance and its long securities positions. Because short sales must be marked to market daily, there may be periods when short sales must be settled prematurely, and a substantial loss would occur. Purchasing securities to close out the short position can itself cause the price of the securities to rise further, thereby exacerbating the loss. Short-selling exposes the partnership to unlimited risk with respect to that security due to the lack of an upper limit on the price to which an instrument can rise. Short sales may be utilized to enhance returns and hedge the portfolio. The Partnership anticipates that the frequency of short sales will vary substantially in different periods. There are no prescribed limits to the amount of Partnership assets that may be subject to short sales.

Dkt. 1 at 103.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 10

Partnership assets that may be subject to short sales." Dkt. 1 at 103. Again, the very document plaintiff relies upon to prove a misrepresentation regarding the volume or frequency of short sales clearly discloses that there are no limits on their use. Thus, even if "may" could be read in isolation to suggest curtailment of the authority given, any confusion was not material where the disclosures immediately clarified that no limitation was intended.

### 3. Diversification

Plaintiff alleges that defendants falsely promised to use multiple different strategies in investing and to diversify the fund's investments. Dkt. 1 at ¶ 45. The statements were false, plaintiff alleges, because, as of July 31, 2024, the fund held $10.5 million in cash and fixed income products (presumably Treasury bills) and $45 million in short-term put options tied to the Standard & Poor 500 Index ("SPX put options"). Dkt. 1 at ¶ 60. Again, the fund's investments at the time the representations regarding multiple strategies and diversification were made is unknown. What the fund held at the end of July 2024 does not, in and of itself, give rise to a plausible inference regarding what the fund held when the statements were made.

Plaintiff insists that the fund must have been overwhelmingly invested in short-term SPX put options from the very beginning since any material changes in investment strategy required the consent of a majority interest of the limited partners, and plaintiff was never asked to consent. Dkt. 1 at ¶¶ 43 and 65. No material change occurred. The PPM expressly provided that "index options" would be the "primary focus" of the fund. Dkt. 1 at 88. It further stated that the description of the fund's investment strategy imposed "no significant limits on the types of instruments in which [Pentium Invest] may take positions . . . or the concentration of investments." Dkt. #1 at 89-90. *See also* Dkt. 1 at 102 ("The Partnership is not subject to any significant limitations on the amount of Partnership

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 11

Capital which may be committed to any . . . security type . . . . As a consequence of this potential investment concentration, the Partnership may be subject to greater losses than would be the case if it maintained a more diversified portfolio."). Plaintiff has not, therefore, identified a change in the disclosed investment strategy that would have required the consent of the limited partners or raised a plausible inference that the overleveraged and illiquid position the fund found itself in on July 31, 2024, pre-existed plaintiff's investment.

The absence of a material misrepresentation of omission is fatal to plaintiff's PSLRA claims.

## D. Federal Control Person Liability (Count II)

Pentium Invest cannot be held liable under Section 20(a) of the Exchange Act in the absence of "a primary violation of underlying federal securities laws, such as Section 10(b) or Rule 10b-5." *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 702 (9th Cir. 2021). Because there is no material misrepresentations or omissions (as described above), this claim must be dismissed.

## E. Fraud-Based State Law Claims (Counts III, IV, V, and VI)

In addition to claims under the federal securities laws, plaintiff asserts state law claims of securities fraud (Counts III and IV), fraudulent inducement (Count V), negligent misrepresentation (Count VI), and Washington Consumer Protection Act ("CPA") violations. These claims are not subject to analysis under the PSLRA, but they must meet the pleading requirements of Rule 9(b).[3]

---

[3] Plaintiff alleges that defendants engaged in an unfair or deceptive practice when they "specifically targeted" him and other investors for contributions to the fund based on materially misleading information. While not all negligent misrepresentation claims or claims brought under the CPA must be pled with the specificity prescribed by Rule 9(b), state law claims that allege and depend upon fraudulent conduct must be averred with particularity. *See Vess*, 317 F.3d at 1103-04 ("In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 12

Under Rule 9(b), allegations of fraud must be pleaded with particularity. Specifically, a plaintiff alleging fraud must "state with particularity the circumstances constituting fraud." "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted). Importantly here, "a plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (quoting *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994) (emphasis in original)). While plaintiff has adequately alleged the who, what, when, where, and how of the statements at issue, he has not adequately alleged that they were materially false or misleading at the time they were made.

**F. Withdrawal Claims (Counts VII-X)**

In July 2024, plaintiff requested that he be permitted to withdraw his investment from the fund. He alleges that the moving defendants agreed to disburse half of his investment on July 31, 2024, and the remainder on August 31, 2024. Nevertheless, when the fund was liquidated on August 6, 2024, the entirety of plaintiff's investment had been left at risk and he lost it all. Plaintiff alleges that defendants' failure to segregate the $447,218.52 the fund owed him as of July 31, 2024, solely benefited defendants and

a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."); *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1058 (W.D. Wash. 2020) (allegations that defendant knew and intended to deceive customers with its reference pricing scheme sounded in fraud); *Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1265 (W.D. Wash. 2009) (Rule 9(b) may apply to CPA claims containing "allegations of either an intent to deceive or an overarching fraudulent scheme."). Plaintiff expressly alleges that defendants knew the statements they made in the PPM and Investor Presentation were materially misleading at the time they were made. Dkt. 1 at ¶ 66.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 13

violated the fiduciary duty of loyalty owed to the limited partners. Plaintiff alleges that defendants retained the money to serve as collateral for the fund's margin requirements and to minimize their own risks in case of liquidation. Finally, plaintiff suggests that defendants could have and should have sequestered the amount owed him on August 5, 2024, when the fund's broker notified defendants that the fund would have to obtain additional collateral or be liquidated. Plaintiff asserts claims of breach of fiduciary duty, unjust enrichment, conversion, and breach of contract arising out of the failed withdrawal attempt.

Defendants argue that plaintiff's allegations do not reflect the reality of the situation, skipping "several steps in time and law." Dkt. 12 at 26. Defendants point out that "withdrawals are generally made within 30 days of the applicable Withdrawal Date," Dkt. 1 at 58, that valuations and allocations were not performed on a daily basis, Dkt. 1 at 93-94 and 112-13, and that net asset valuations were performed by a third party, Dkt. 1 at 114. While the Court can take judicial notice of those parts of the disclosure, it cannot, on a motion to dismiss, credit defendants' argument that these provisions made payment and/or segregation within 30 days an impossibility. Plaintiff alleges that the parties agreed to a 50% payout on July 31, 2024. Whatever discretion Pentium Invest had to deny or delay a requested withdrawal was apparently not exercised, and the Court is not free to ignore this allegation in favor of an interpretation of the record that draws all inferences in favor of defendants.

With regards to the unjust enrichment and conversion claims, defendants argue that the claims fail as a matter of law because a contract governs the rights and obligations of the parties. Plaintiff alleges a side agreement regarding the payment of his withdrawal in two parts and on a specified schedule. That contract may prevent an unjust enrichment

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 14

and/or conversion claim, but proof of the agreement has not been established and plaintiff may pursue the tort claims in the alternative.

For all of the foregoing reasons, the motion to dismiss filed by defendants Pentium Atlas Fund III and Pentium Invest, Dkt. 12, is GRANTED in part and DENIED in part. Plaintiffs' PSLRA and fraud-based claims related to the disclosures fail as a matter of law. The tort claims related to the failure to pay or sequester funds may proceed. Because this matter continues, leave to amend will not be blindly given. If plaintiff and his counsel believe they can, consistent with their Rule 11 obligations, remedy the deficiencies identified in this Order, they may file a motion for leave to amend the complies with LCR 15.

DATED this 9th day of March, 2026.

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 15